GAULDEN v. ANTONE et al. (No. 8715.)

(Court of Civil Appeals of Texas. Galveston. Nov. 4, 1925.)

1. Ejectment ⚖➡95(1)—Evidence held to sustain finding that contract had been forfeited for vendee's failure to pay purchase price and taxes.

In action by husband for recovery of lot purchased by his wife, evidence held to sustain finding that vendor, prior to wife's death, had given notice that it declared contract null and void for nonpayment of purchase price installments and taxes.

2. Witnesses ⚖➡142—President of defendant corporation, called as witness by plaintiff, competent to testify to transaction with plaintiff's deceased wife.

President of defendant corporation, called by plaintiff to testify relative to transactions between corporation and plaintiff's deceased wife, was not an incompetent witness to give such testimony, under Rev. St. 1911, art. 3690.

3. Judgment ⚖➡252(2) — Judgment awarding defendants title to property held unauthorized by the pleadings.

A judgment awarding title to property sued for to defendants held unauthorized and void, where none of defendants alleged ownership nor prayed for judgment for title, but merely answered by general denials and pleas of not guilty.

Error from District Court, Galveston County; Robt. G. Street, Judge.

Action by Alex B. Gaulden against Fred Antone and others. From the judgment, plaintiff brings error. Reformed and affirmed.

Frank S. Anderson, of Galveston, for plaintiff in error.

D. J. Wilson, of Galveston, for defendants in error.

LANE, J. This is a suit by Alex B. Gaulden, which, as made by his second amended petition, is one against the Security Home Investment Company, a corporation, Fred Antone and wife, Ruth Antone, James A. Hawkins, George Q. McCracken, temporary administrator of the estate of Chaney Johnson Gaulden, deceased, and A. Stanley and Gus A. Butterowe, Jr., sureties on the bond of McCracken as temporary administrator, to recover the possession of a certain city lot situated in the city of Galveston, Tex.

Plaintiff alleged substantially that on the 1st day of March, 1913, Chaney Johnson, then a feme sole, and the Security Home Investment Company, entered into the following contract:

"This agreement, made this 1st day of March, in the year 1913, by and between Security Home Investment Company, a corporation created and existing under the laws of the state of Texas of Galveston county, Texas, of the first part, and Chaney Johnson of Galveston county, Texas, of the second part, witnesseth:

"That in consideration of the stipulations herein contained and the payments to be made, as hereinafter specified the first party hereby agrees to demise, release, and convey by warranty deed unto the party of the second part, the following real property, viz.: Lot No. 9 in the northwest block of out lot No. 12, together with all improvements thereon situate, in the city of Galveston, county of Galveston, state of

Texas, according to map and plat of said city in general use.

"The sum and price to be paid for said property is twenty-six hundred dollars ($2,600), of which amount payment has been made and received of three hundred dollars ($300) and the remainder of twenty-three hundred dollars ($2,-300) shall be paid to said party in payment at the time and in the manner following, that is to say: Twenty dollars ($20) per month, beginning on or before the 1st day of April, 1913, and continuing monthly thereafter until said sum and interest thereon from date will be paid at the rate of 8 per cent. per annum and interest payable monthly, has been fully paid.

"And' the said second party, in consideration of the premises, hereby to make punctual payment of the above sums as each of the same respectively become due, and to regularly and seasonably pay all such taxes and assessments as may hereafter be lawfully imposed on said premises, including taxes for the year of 1913; said second party agrees to keep the improvements on said premises insured to the full amount for which the same may be insurable with loss, if any, payable to the said party of the first part as its interest may appear; such insurance to be kept up and policies delivered unto the said first party until this contract is fully paid out.

"In case said second party or his legal representatives or assigns shall pay the several sums of money aforesaid punctually and at the times above limited, and shall strictly and literally perform all and singular her agreements and stipulations aforesaid, then the said first party will cause to be made and executed unto the said second party, her heirs or assigns, a conveyance of said estate, as above set forth. It is hereby agreed and covenanted by the parties hereto that time and punctuality are material and essential ingredients of this contract.

"And in case said second party shall fail to make the payments aforesaid, and each of them, punctually, and upon the strict terms and times above limited, and likewise to perform and complete all and each of her agreements and stipulations aforesaid strictly and literally then this contract, so far as it may bind said first party, shall become utterly null and void, and that the whole amount of the principal and accrued interest mentioned herein remaining unpaid shall immediately become due and payable, and all rights and interests hereby created or existing in favor of the said second party or derived from her shall utterly cease and determine, and the right of possession and all equitable and legal interests hereby contracted shall revert to and revest in said first party, without any declaration or forfeiture or act of re-entry or any other act of said first party to be performed, and without any right of said second party of reclamation or compensation for moneys paid or improvements made, as absolutely, fully, and perfectly as if this contract had never been made. And said first party shall have the right immediately, upon the failure of the said party of the second part to comply with the stipulations of this contract to enter upon the said land aforesaid and take immediate possession thereof, together with all the improvements and appurtenances thereto belonging, and said second party covenants and agrees that she will surrender unto the said first party the said land and appurtenances without delay or hindrance,

and no court shall relieve the said second party from a failure to comply strictly and literally with this contract.

"And it is further stipulated that no assignment of the premises shall be valid unless the same shall be indorsed thereon.

"In witness of which the parties hereto have set their signatures, and the corporation fixed its seal, to these presents in duplicate on the day and year above written. Security Home Investment Company, by L. T. Erickson, President, Party of the First Part. Attest: Henry Lawther, Secretary. Chaney Johnson, Party of Second Part.

"It is further mutually understood and agreed that whenever the said second party shall be in default with her payments for a period of sixty (60) days, the said first party at its option may declare this contract null and void, and all money theretofore paid on this contract shall be and held to be in full for the use of said premises up to that time, and thereafter said second party shall hold said premises as the tenant from month to month of said party of the first part and the relation of landlord and tenant only shall exist between us thereafter at the rental of twenty dollars ($20) per month, and may be terminated any month by giving written notice. Security Home Investment Company by L. T. Erickson, President, Party of First Part. Attest: Henry Lawther, Secretary. Chaney Johnson, Party of Second Part.'"

Plaintiff also alleged that Chaney Johnson, on said date, entered upon the premises described in said contract and made it her home until the 3d day of January, 1922, on which date she died; that he married Chaney Johnson on the 4th day of January, 1915, and that such marriage relations continued until the death of Chaney Johnson; that the premises described in said contract constituted their homestead; that up to the time of the death of his wife all the conditions of said contract were carried out by him and his wife, which fact was never questioned by any of the defendants; that after the death of his wife he was informed that several of the monthly payments called for by said contract were due and unpaid, and that he thereafter tendered payment thereof to the Security Home Investment Company; that defendants entered upon said premises by force and fraud and are now forcibly withholding same from him; that Fred Antone and wife are now unlawfully in possession of said premises under some agreement entered into with Security Home Investment Company or some of the other defendants, the exact nature of said agreement being unknown to plaintiff.

Plaintiff prayed:

"(a) That said contract be held legal and binding and in force as to plaintiff and defendant Security Home Investment Company; (b) that defendant Security Home Investment Company be required to carry out the terms of said contract; (c) that defendants be required to make accounting of all rents and revenues paid and received since plaintiff was dispossessed of said premises, and that plaintiff have judgment

against said defendants for all amounts paid and received as rents, revenues, or otherwise from said premises, and that the same be credited to plaintiff as payments upon said contract; (d) that the said defendants be dispossessed of said premises, and that plaintiff have writ of possession and restitution against all of said defendants, for said property and premises, and that plaintiff be quieted in his right to title and possession of said premises, and for damages in the sum of which plaintiff herein shows, and for such other and further general and equitable relief, orders, judgment and decrees as plaintiff may be entitled upon the case made, with costs of suit, etc."

Upon request of the plaintiff, the suit as against McCracken and the sureties on his bond was dismissed, and the costs incurred in making them parties were adjudged against the plaintiff. All other defendants answered by general denial and by plea of not guilty.

The cause was tried before the court without a jury and judgment was rendered that plaintiff take nothing against any of the defendants, and that the Security Home Investment Company, Antone and wife, and James A. Hawkins recover of and from plaintiff title and possession of the premises. From the judgment so entered, the plaintiff, Gaulden, has appealed.

The trial court filed his findings of fact and conclusions of law at the request of the plaintiff, and, among other things, found, substantially, that the property in question was, prior to her death, the separate property and homestead of Chaney Johnson Gaulden, deceased, subject to forfeiture for breach of the contract entered into for its purchase, and that she had forfeited her right thereto prior to her death. The court also found that appellant had abandoned his wife and the premises as his home prior to the death of his wife, and therefore had no homestead rights in the same, regardless of whether the contract had been forfeited by the wife by reason of a noncompliance with its terms and conditions.

The main and controlling issues presented by this appeal are as to whether the contract for the purchase of the property was forfeited by Chaney Johnson Gaulden prior to her death and the right of the defendants to judgment for the property. If the conclusion of the trial judge that Chaney Johnson Gaulden had forfeited any rights she had acquired under the contract is supported by competent probative evidence, so much of the judgment as · is against the plaintiff should be sustained by us, and in such event all other complaints presented by this appeal will become immaterial inquiries, except the complaint that the court erred in rendering judgment for defendants for the title to the property.

If said contract was so forfeited, plaintiff ceased to have any interest whatever in the property acquired by virtue of the contract or by occupancy thereof as a home. All his rights, if any he had acquired, were by virtue of the contract and subject to the performance of its terms by Chaney Johnson Gaulden.

By the contract entered into between the Investment Company and Chaney Johnson, it was agreed that the purchase price of the property was to be $2,600, $300 cash and $2,-300 in deferred payments of $20 per month, beginning on or before the 1st day of April, 1913. It was further agreed that Chaney Johnson, who is hereinafter referred to as the second party, would pay all taxes as they became due on the said property.

It was also agreed by the said contract that time and punctuality were material and essential ingredients thereof, and that in case Chaney Johnson should fail to make any of the payments which she had obligated herself to pay upon the strict terms and times provided in the contract, or should fail to perform and complete all and each of her agreements strictly and literally, the contract, in so far as it bound the Investment Company, hereinafter called the first party, should become utterly null and void, and that the amount of the principal and accrued interest mentioned therein remaining unpaid should immediately become due and payable, and all rights and interests thereby created or existing in favor of the said second party or derived from her should utterly cease and determine, and the right of possession and all equitable and legal interests thereby contracted should revert to and revest in said first party, without any declaration or forfeiture or act of re-entry or any other act of said first party to be performed and without any right of said second party of reclamation or compensation for moneys paid or improvements made, as absolutely, fully and perfectly as if the contract had never been made. And that said first party should have the right immediately, upon the failure of the said party of the second part to comply with the stipulations of the contract to enter upon the land described in the contract and take immediate possession thereof, together with all the improvements and appurtenances thereto belonging, and it was stated in the contract that said second party covenants and agrees that she will surrender unto the said first party the said land and appurtenances without delay or hindrance, and no court shall relieve the said second party from a failure to comply strictly and literally with his contract.

It was further agreed that should the second party at any time be in default with any of the payments provided in the contract for a period of 60 days, the first party might declare the contract null and void, and said second party, should she hold the premises, would hold the same as a tenant from month to month of the first party, and that

the relations of landlord and tenant only would exist between them thereafter at the rental of $20 per month, and that such tenancy might be terminated any month by giving written notice.

[1] James A. Hawkins, president of the Investment Company, was called as a witness by the plaintiff to testify relative to the transactions the company had with Chaney Johnson. Among other things he testified that prior to the death of Chaney Johnson she got in arrears with her monthly payments on the purchase price of the property, and that she also got in arrears in the payment of taxes in about the sum of $300. He also testified that he notified Chaney Johnson Gaulden that he had exercised the option given in the contract prior to her death; that he notified her that the money he was receiving for the Investment Company after such notice was rental; that he "raised sand" with her, and that she understood thereafter that they were treating her as a tenant of the Investment Company. There was other testimony given by this witness relative to the forfeiture of the contract by Chaney Johnson, but we deem it unnecessary to state it here, as that stated is sufficient to support the finding of the trial court that the Investment Company had, prior to the death of Chaney Johnson, notified her that it had declared the contract null and void, even if such notification was necessary to accomplish that purpose.

Appellant, however, contends that, as James A. Hawkins was a party to the suit, his testimony was incompetent and of no probative force.

[2] This contention cannot be sustained, as he was called to testify relative to the transactions had between the Investment Company and Chaney Johnson by the plaintiff, his adversary, and therefore he was not made an incompetent witness to give such testimony by article 3690 of the Revised Civil Statutes, and his testimony, if of probative force, was sufficient to support the finding of the court above mentioned.

We have reached the conclusion that so much of the judgment as decreed that plaintiff take nothing by his suit and the defendants go hence without day should be affirmed. We have also reached the conclusion that so much of the judgment as awards to the defendants title to the property involved in the suit should be set aside and held for naught.

[3] There were no pleadings authorizing so much of said judgment as awarded title to the defendants. None of the defendants allege that they were the owners of said property, nor was there any prayer by any of them for judgment for title to the property. Their answers, as have already been shown, consisted of general denials and pleas of not guilty only. Under such pleadings they could not recover judgment for the title to the property.

Having reached the conclusions, as above expressed, the judgment of the trial court is so reformed as to set aside so much of the same as awards to the defendants a recovery of the title to the property, and, as thus reformed, the same is affirmed.

Reformed and affirmed.